70-4175, Cambridge Group Technologies, LLC, Motorola, Inc, etc. Please approach the podium, I'll ask your name. Good morning, Your Honours, and may it please the Court. I'm Kurt Fuqua, a plaintiff, appearing pro se. I am the author and owner of the software invention at the core of this controversy. As detailed in my third amended complaint, without my consent and without payment, my invention is currently being used by defendants and falsely attributed by them to a third party, a Swiss company, S-Fox AG. Defendants deny my authorship of the invention. Their denials are found in their fourth and final answers to the complaint in paragraph 11. They also deny that I was ever the owner of the software. In the same paragraph, their denials make me an indispensable party. If I didn't author and own the software, I have no property rights to license to Cambridge, and they would have no property rights to sub-license to Motorola. Cambridge's rights derive from my rights. That makes me an indispensable party. Nevertheless, the Court dismissed me upon defendant's motion without rationale. Once I was dismissed, the defendants changed their theory of the case. The defense then claimed that I had given away my software to S-Fox AG. Ms. Kupfer, can I ask you, this was ruled on in 2014. The Court granted defendant's motion to dismiss you. Correct. Legal personally. And what legal argument do you have to counteract what the trial court did relative dismissing you? It was for, do you recall the reason the trial court dismissed you? The Court did not provide a rationale in their written decision. Of course, there was a motion, and they granted the motion, but they didn't provide any rationale. Well, wasn't there discussion about whether or not you had standing since you weren't part of the contract? The Court did not say that I did not have standing. They didn't address that fact in its order. Okay. Well, I was going to ask you that question. Justice Connors asked you part of what I was going to ask you. What is the legal argument supporting your claim to standing in order to bring this action? Your Honor. What is the legal support for your standing in this litigation? Yes. Do you have a case name or? Yes. The Supreme Court in 1985 in the case of Feene v. Ray said that it's generally accepted that under fundamental principles of due process, a court's without jurisdiction to enter an order of judgment which affects a right or interest of someone not before the court. This certainly affects my rights to my software in this, and my software rights are implicated in every claim. The court should have recognized that it could not rule on the property rights of these two parties if they were not properly joined, and the court, it's the court's duty to consider its own jurisdiction. Apparently, the court didn't consider. How do you pronounce your name? Fuqua. Mr. Fuqua. Well, what is Cambridge's rights to the software? Cambridge's rights derive from my rights. I licensed it to Cambridge, my wholly owned company, and Cambridge then sub-licensed it to Motorola, who sub-licensed it. Is there actually a written license agreement to that effect in the record someplace? Yes, there is, between Cambridge Technologies, my company, and Motorola, and I was not a party to that. I don't claim that I was. Is that my question? My question is, is there, you just told us that there's a license agreement between Cambridge and yourself as the author of the software. Yes. Is there a written agreement to that effect in the record? It's not in the record, Your Honor, but my ownership is claimed in paragraph 11 of the complaint, and my authorship is also claimed there, and there is support for that in the deposition from S. Fox A. Chee, who acknowledged that I was indeed the author. Which brings me to another point, Mr. Fuqua. The record is woefully deficient of many portions of deposition, testimony, rulings on motion, and so on, that we really need to have in order to have a complete picture of the case. And as you probably know, under Illinois law, if you provide the appellate court with a deficient record, we presume that the trial court acted within the bounds of the law in ruling whichever way it ruled. So I think you ought to be aware of the fact. What Justice Deloitte asked you is a question that I wanted to know, too. I don't think that there was any document in the record attesting to what you just said. People say many things in the course of a litigation, and they write many things in the complaint. There is no document in the record that outlines the agreement that you just spoke about. The agreement would be between myself and Cambridge. That's correct. Your Honor, the complaint is to be constrained in my favor, and the complaint clearly says that I was both the author and the owner. It also is backed up by the documents in the record that show under seal that a copyright bears my company, my sole proprietorship's name on it. That certainly shows my ownership. There's also affidavit testimony from me saying that I was the author and owner and licensed it to Cambridge, and there was a deposition testimony from myself and from Bjorn Rudolfsson of SFAG to that effect as well. Let me ask. Other than your testimony, what other evidence is there of your ownership? There is a written document showing that there was a copyright claim. My question is in the record. In the record there is under seal a document showing my original invention prior to any involvement with SFAG showing a copyright in my name. Do you know what pages that's located on in the record? It was filed under seal. It was one of the exhibits to my deposition testimony, and I went through in detail comparing that document, the original document, to the misappropriated document from Motorola line by line through 200 lines between those two exhibits. Which brings me to another point here. Both your brief as well as the brief for Cambridge as well as Motorola. No citations to pages in the record. Basically citing to pages in your exhibit and so on, but no citations to pages in the record as required by Supreme Court rule. Which makes it very, very difficult for this court to figure out what you're talking about. And we're in the record. We should find that throughout the entire brief, both on your side and on Motorola's side. I believe that was your word in the brief. I say clear violation of Supreme Court rule. It makes it much more difficult for this court to go through a record that's hundreds of pages long. And with all due respect, we assume that what you're saying is factual, but we have an obligation to check what you're saying against the record. When there's no citation, you can imagine the problem. We have decided that we were going to go forward with this case, but this is a clear violation of Supreme Court rule. And I have the same comments for your opponent, because their briefs fared no better. Continue, Mr. Krupa. I appreciate that, Your Honor. And also, I would point out that the specific key evidence of Bjorn Rudolfsson's testimony that I was the author of the software is on page 64 of his deposition. I believe that's exhibit J to my appeal. This case began as a central breach of contract between my wholly owned company, Cambridge Group Technologies, and Motorola, now bifurcated into Defendant's Motorola Solutions and Motorola Mobility. Motorola had supplied us with two software products created by me, but the case changed in 2012 when I discovered that both defendants had resumed distribution of the derivative of one of the software products, WorldBench. Both defendants had incorporated my software into their hardware and began distributing it in millions of devices starting in October 2009, in phones, tablets, and even in this watch. Defendants Affairs were not in account for the new distribution. They're making a false attribution of my authorship. I joined the case in a complaint where someone did. Mr. Fuqua, the difficulty with your side of the case, which is why I think the circuit court ruled the way it did, is all the claims in the complaint filed by the two plaintiffs, you and Cambridge, are derivative of the contract. You don't believe they all have the patent? No, and that's a good point that you raise, and I'm glad that you mentioned that. The nature of the damages pivots on the key material fact that's disputed between the defendants, whether the software license agreement was terminated or not. If it was not terminated as Motorola Solutions, if it was terminated as Motorola Solutions, according to a letter dated August 29, 2001, then the rights of Cambridge are not derived from a contract but unjust enrichment. That's the only one you may have an argument about as far as being personal, but most of them are based on breach of contract, are they not? No, they aren't, Your Honor. Well, that's what you're saying. This is an attribution claim. Realize that independent of the contract, I have a claim of attribution. That's a state right that derives from unjust enrichment, as I cite in my case. That's your count four, the unjust enrichment, right? Your count four is unjust enrichment. Yes, it is. The other counts are based on the contract, are they not? But they are alternate claims, and at this point in their... And I'm not sure what you mean by that. In other words, if the contract was in fact terminated, then I can't have any contract rights. No, I admit that I was not a part of the contract. However, there is a clause in the contract that requires proper attribution of a copyright. Since all parties admitted that I was the owner of all copyrights, that clause was inserted for my benefit, which makes me a beneficiary of the contract. But I was not a signature to that. So these arguments, have they been made in your briefs? They have indeed, Your Honor. And this is not a new kind of argument. This was in the contract, specifically in clause 77. The software license agreement requires attribution of the copyright in section 4.8.1. Since all parties knew that I was there, that was for my benefit. I would point out that there was also fundamentally a dispute between the two defendants. Mobile Oil Solutions claims that this letter of August 29, 2001 terminated the agreement for convenience, but Mobile Oil Mobility completely contradicts that. They deny that the termination letter ever existed. That's in their answers, paragraph 24 to the complaint. If, moreover, the letter was never sent to Cambridge, it was only addressed to me personally at my home, which further implicates my rights in the dispute. This disputed material fact between the defendants is alone sufficient to bar summary judgment. Mr. Fuqua, let me, before you run out of time, ask you a question. It might be more out of curiosity than anything else, because I used to do a lot of coding in one of my previous lives. You're talking about 200 lines of code here. What did those 200 lines of code actually do? Because I know enough that 200 lines of code is not going to translate English into Japanese all by themselves. What this invention is all about is I'm a computational linguist. This is a means of representing the phonemic sounds of one language and in another language in a systematic way. I read about the phonetic alphabet, so you're basically translating the various sounds that occur in the language. Between them in a systematic way, and it's something that nobody else has done. Obviously, it's a value. If it weren't, the defendants wouldn't be using it in these millions of products. They're doing it with a false attribution. This is the essence of it. They deny that I'm the author. Independent of the contract, you can't deny my authorship. I have a right to proper authorship and proper attribution. Then the question becomes, why isn't your remedy a copyright lawsuit in federal court? Because attribution does not arise under the Copyright Act. Therefore, it's not preempted. Section 208 specifically says if it's a visual art, then there's a right to attribution. This is not a visual art. It's text input, text output, text that processes it. There's no visual aspect whatsoever. So no attribution arises in the Copyright Act. It's not preempted by the Copyright Act. This was removed to the federal court by Defendant Mortallera, and Judge Langeweber ruled that he had no authority, no jurisdiction, because this was not a copyright claim. This is a pure contract claim or an unjust enrichment claim. Well, it sounds to me like the copyright issue blossomed as the case developed. I don't know what Judge Langeweber ruled on, but you are basically asserting your right to intellectual property that others are using without your consent. That's like the most rudimentary definition of a copyright claim that I can think of. No, Your Honor. First of all, it has to be registered. I'm not registering it. They never claimed it was registered. There's no right for me to sue them in federal court unless I have a registered copyright. They never assigned that. Also, it was never assigned. If, remember, Mortallera is attributing the copyright to S. Fox AG, something S. Fox AG doesn't agree with. They're not claiming that they have a copyright. Remember, they've acknowledged my authorship, so S. Fox AG cannot contest my copyright. Well, we all can't contest my copyright because they don't claim that they own the copyright. You have to have standing in federal court to do that. So nobody can contest it in federal court. This is not a copyright claim. There's no reason the court had to rule at this point on the ownership. I said in my complaint that I was the owner. Counselor, or sir, remind me, where in your complaint do you make a claim for attribution, and what's it based on? Is it a common law claim? Is it an Illinois statutory claim? Yes. I claim an attribution under count four. So that's the unjust enrichment, right? Yes, the unjust enrichment. And that's where my unjust enrichment derives. This is all about my authorship and attribution. They're currently, today, falsely attributing this to somebody else. That arises as the third restatement says, under unjust enrichment. But, again, that is based on the contract language talking about attribution. No. These are alternate. Even if there was no contract, I have an unjust enrichment claim because they're misrepresenting my authorship. And my authorship arises as an unjust enrichment claim, as the third restatement says. Clearly, in your count four, you make a claim for attribution and make a prayer for relief asking for whatever monies under the attribution claim. Yes. Now, the other side would point out that I made reference to the contract. Perhaps it wasn't really the best way, but the reason why I made reference to the contract is just to point out the value of what the sides had agreed to in their other contract about the value of the work. That's all. All right. Your Honor. Could you please wrap up this report? Yes. Yes. The court failed to rule on the plaintiff's motion to do and admitted the 23 requests to admit. Four of these were never answered. The remainder were untimely answered by men who admitted that. You have to stick to. Yes, Your Honor. I'll skip that. I would point out that the court also erroneously decided a condition precedent to this lawsuit. The self-releasance agreement requires mediation as a condition precedent, which affects my rights, of course, to the litigation. In two places in the complaint, paragraph 32 and 65 asserted that the mediation took place. I was an eyewitness. I supported this with the original mediation paper and an affidavit. The defendants denied this, but not in conformance with Supreme Court Rule 133 or counter-affidavit. The court impermissibly reversed the burden here. The timing of the mediation on December 6, 2001, makes clear that all claims were well within the limitations period and the misattribution and misuse is ongoing. In summary, because the court decided disputed material facts, impermissibly reversed the burden, failed to rule on the motion to deem admitted the request to admit, and entered judgment that affects my rights when I was not before the court, the grant of judgment on all counts must be reversed and remanded so that the proper parties may be joined. Thank you. Thank you. I'll give you a few minutes for rebuttal. Thank you, Your Honor. May it please the court. My name is Adam Shramick, and I'm an attorney for the defendants, Motorola, and have been since day one when this case was filed about six years ago. And, of course, I have local counsel, Ralph Arnton Thornbrook, here. I want to start my argument by apologizing to the court. I heard the statement that we had violated the rule by not citing to the record sites. I cited to my appellant. I cited to the record appendix site, but didn't do the countersite to the record. I misunderstood that rule, and it wasn't caught by local counsel, so I apologize. That's a huge mistake, counsel. And if you do appellate practice, I would caution you in the future not to do that, because depending on who your brief ends before, your brief could be stricken, because it creates a huge problem for this court. It's like a fishing expedition for us to fish through hundreds of pages to find out where in the record a particular point of reference may be found. And that's not something that we are required or want to do. I understand, Your Honor. I did not at all intend it. I'll note in my appendix the record site is below the appendix page, but it's still inappropriate. And I apologize. Mr. Schrammer, let me start with one question before you launch into what you want to tell us. Is there any Federal litigation going on right now? Not to my understanding. We attempted to remove this case upon filing of the amended petition, and it was remanded because the Federal court determined there was no Federal question that this was a state law breach contract case. And, counsel, I have to ask you, count four. Is there a prime officiate case, or is there a request for attribution? Is there a prayer for relief for attribution? So, Your Honor, I actually brought it up here because I thought you may want to look back at the third amended complaint, which is what was ruled upon. And the claim, and I'll quote it, Motorola is entitled to use in distributive derivative versions of the licensed software and all updates thereto. Okay? So they're going back to the contract, saying we have a contract right to do it. Required to pay full royalty. That's what they say. We haven't paid full royalty. Continues to use and distribute a derivative version of the licensed software without paying royalties, without providing an accounting, which, of course, is under the contract, without attribution, which is also in the contract, or fulfilling other contractual obligations. So the answer is yes. Yes. There's reference to attribution. But an important consideration for the Court here is that the attribution clause in the contract is for Cambridge, not Mr. Fuqua. In fact, I want to quote to the Court what the contract says in Section 481. But bear with me for a moment. Assuming just hypothetically what Mr. Fuqua says, that there is an agreement that ties him to Cambridge, if you read those two things together, plus the prayer for relief in count four that refers to attribution, does that make him a necessary party? Absolutely not, Your Honor. Well, I expected you to say that. But tell me why. Sure. I can tell you why. First of all, to the extent he asserted the claims that were properly dismissed on summary judgment based on the record, whether it was Cambridge's unjust enrichment claim and lack of attribution, or whether it was Mr. Fuqua's claims for unjust enrichment or lack of attribution. The same merits ruling that the judge determined as a matter of law. What about his argument that Section 4.4-8.1 of the contract that was specifically inserted as his protection is something that the Court should look to to determine whether there was a question of fact? What about that? I believe if the Court reads the clause, which say the only requirement is to attribute Cambridge's copyrights. That was the only agreement. Mr. Fuqua is never once mentioned in the agreement, and he doesn't qualify as a third-party beneficiary under controlling law. It was not made for his benefit. In fact, he made the conscious choice to create a corporation to receive all the protections that a corporate entity receives, avoiding personal liability, things like that. And in the contract, all the obligations are between Cambridge and Motorola. Nothing was done for Mr. Fuqua's personal interest. And under Illinois law, it states that, in fact, if you're going to be a third-party beneficiary, generally the contract must make that explicitly clear. And here, the contract doesn't come close. The only mention of Fuqua is on the signature line in the contract, and that says the president and sole owner of the corporation. In the very beginning, we had the, you know, the primary defense of this case was that the corporation was no longer valid. Its charter had lapsed. We'd spent three years before Mr. Fuqua brought it up to speed, paid the past amount so that the corporation could then file the claim. So I don't think there is anything in this contract that would create a right, whether it be at law or equity, whether it be unjust enrichment or breach of contract as a third-party beneficiary, for Mr. Fuqua to stand up here and argue for the rights of Cambridge. Is there any evidence in the record relative to a licensing agreement between Mr. Fuqua and Cambridge? Your Honor, I know that at one point in time he did produce one to me, and he had written it to himself, and I believe it was undated. I can't remember. In this record. But I don't believe it was in the record. So I'm not seeing it in the record. When do you – let me switch issues for a second. When do you contend that Motorola actually terminated the contract? Sure. I believe – Was it – you know, there's a whole series of letters back and forth that were rather pointed in their talk. You didn't do this, we did that, you know, that kind of thing. But at what point in the sequence does Motorola say the contract was terminated, and under what basis was it terminated? I believe it was pretty clear that it was terminated by August 29th of 2001, which is when Mr. Pfaff sent the letter saying the relationship isn't working. Stop all work. Don't do anything more. Let's meet to figure out how to part ways is basically what he said. As a result, Mr. Fuqua wrote a letter in which he said, no objective person could read your letter as anything other than a termination. Now, after that fact, Motorola sent a notice to terminate for cause. And the reason, of course, is because if you terminate for cause, you're not on the hook for past due amounts. And so after that, they sent that letter. But I think the evidence is pretty clear that on August 29th it was terminated for convenience. Now, here's the thing. If it was terminated for convenience on August 29th, that means that Cambridge has a potential claim for past due royalties, putting aside whether it's time barred. But if, in fact, it was terminated for cause later, then the amounts weren't due. So under either scenario, there's no claim by Cambridge. Either their claim is time barred because it was terminated for convenience, or there's no amount owed because it was terminated for cause. But I think it's pretty clear on August 29th, according to the plaintiff's own admission and own letters, which I think Judge Hall was very convinced by the letters that the plaintiff had sent, asserting that termination had occurred, that it was August 29th. The dates, other than the last two deliverables, of course, the dates are uncontested. One argument, of course, has to do with whether or not when did the statute of limitations begin to run. I think the Illinois law is very clear. It's when you have a legal right to make a claim. And so we kind of get into this issue of, well, what about the mediation? Well, you don't go to mediation until you have a legal right to assert a claim that you have to mediate. And I'll also note that Illinois, with a 10-year statute of limitations, is one of the longest, if not the longest in the country. I was trying to find a longer one. I haven't found it yet. So this idea that a pre-suit mediation requirement should toll limitations, the courts that have looked at that have said, no, that's just an agreement between the parties before we go down to the courthouse. That doesn't mean you don't have a claim. Your claim is accrued. So I think the first issue as far as the statute of limitations tolling on all the breach of contract claims, we believe is very clear and that Judge Hall was on sound legal ground doing that. And as far as the unjust enrichment claim is concerned, Justice Delord, of course, you mentioned the 200 lines of code. That's, of course, a very important issue if we had to get to the issue of, one, who owns the code, and, two, is it protectable under Federal copyright law? That was one of the reasons for the removal because copyright law talks about not all code is protectable, right? There's some code you have to use just to run the operating system so that it knows how to read the actual lines. So only certain lines of code are protectable. We have no idea. There's no Federal case about whether or not these 200 lines of code are protectable. But there is a state law case that I think the court should be aware of. The state law case is Mr. Fuqua's case against SVOX, his former employer. He was in charge of the project to get these 200 lines of code and all the other code to Google so that they could put it into Android. Android, of course, is an open source software. It's freely made available because the whole concept is we want people to be innovative. We want them to go and develop Android and add it to apps and get it out on the market so more people are using it. Excuse me, is somebody's cell phone ringing? If it is, please turn it off. And so with open source software. And in general, when you come to court, turn your phones off before you come in, please. It's highly, highly disrespectful to have your phone ringing in the middle of an oral argument. Continue, please. And so Google wants to get it on the market. There's two different models, right? One is you sell it and the other is you give it for free and everyone's using it and suddenly you've gotten that sort of market dispersion. So anyway, the point is when Mr. Fuqua was working at SVOX as an employee to deliver it to Google and he claims he negotiated a contract to get Google to buy this piece of software, he was the project manager to get this software into Android so that it would then be freely distributed to people for free. He's suing them claiming that they stole these lines of code from him, claiming that he didn't assign any of his rights to it. Now, when you say he's suing them, is there some pending case out there that is before us at this point? It's not before you, but I don't know the status as of today, but it's been pending on the law side of the court. We're in chancery. This is an appeal from chancery. But on the law side, yes, the case was pending. I don't know the current status, but he sued them claiming that they took it from him. Why is that important? Well, because one thing Judge Hall found important and what she did was say, wait a minute, you can't claim unjust enrichment. Clearly, the evidence, there's no dispute, Motorola is a user of Android. So you're claiming Motorola is using your 200 lines of code just like every other Android user around the globe. Well, of course, Illinois law says if you innocently receive something, that's not unjust enrichment. And here, particularly when you take into account Motorola is receiving the same Android as every other user around the globe, there's nothing special about the 200 lines of code that Mr. Fukui is claiming are his that are in Android. And the other thing is if you look at the law on unjust enrichment, the basic requirement is that it must violate fundamental principles of justice, equity, and good conscience. In other words, it has to be unconscionable for someone to retain a benefit that someone else is claiming. It's unjust. On these facts, Judge Hall can be affirmed on the sole basis that as a matter of law, these facts don't state an unjust enrichment claim. It doesn't matter if Cambridge owns those 200 lines of code or Mr. Fukui personally. There is no unjust enrichment going on here. Now, Judge Hall may have said that Mr. Fukui provided the code. I think Judge Hall was convinced that, in fact, he did put it in there. He worked there. He was the project manager. We have testimony from the lead software engineer that he put it in, and that he even came up with the idea of creating this converter and that we really need this converter in this product. But we don't have to go there, right? I think Judge Hall was convinced that, on this record, there are multiple basis that there is no unjust enrichment claim as a matter of law. The facts don't contest how it got into there. As far as SFOX, either SFOX stole it from Mr. Fukui and he can litigate that in state court, or he put it there voluntarily. Either way, there's no unjust enrichment as a matter of law. With that, I know you said that it would be better if I don't have to use all my time, but I'd be happy to answer any questions that the court has. Thank you.  Thank you. I'm going to ask Judge Hall to come back to the podium and confine your rebuttal to arguments that he made with respect to the issue that you are representing yourself. Yes, Your Honor. What makes me a necessary party in this case is that Motorola disputes my authorship and my ownership. They deny that I was ever the owner of this or that I was ever the author of this. That makes me a necessary party. It's not my claims that make me the necessary party. It's that it affects my rights. The court ruled that my trade secret was not a trade secret. Despite a lack of any support in the evidence, they tried to restrict what I could do with my soccer or who could use my soccer. That affects my rights. Incidentally, this also affects SFOX-AG. They're also a necessary party. Remember, the court ruled adversely to SFOX-AG. SFOX-AG denies before the Illinois Department of Labor that I was ever an employee of theirs. They denied in the deposition I was ever hired to invent anything. Yet, the law court ruled that I was an employee of SFOX-AG. That sets the stage for an appeal because SFOX-AG and I are currently before another case. Originally, Beltair, now this court, now Judge Kodasik. The case is renumbered 17L9466. Those disputed facts, identical facts, have two parties before them in another case in the same circuit. In other words, it sets the stage for an appeal by SFOX-AG on that case that was ruled on by the lower court. Attribution, yes. In count four, there are three cases to point out. But tell me again, in your own words, as simply as you can, in response to Mr. Kramick's pointed statement that there is no unjust enrichment. Why do you say that there is? Yes, unjust enrichment goes to attribution. Attribution's at the core. Remember, the court did not rule on the false attribution. They didn't say whether Motorola could continue the false attribution. Motorola has known at least since 2012 when I filed my complaint that this was mine and that it was falsely being attributed. Yet, they're still distributing millions, 10 million, they've admitted. Ten million copies of mine with a false attribution after they knew they had a false attribution. That's not, that was willful. That was deliberate on their part to continue that false attribution, even after SFOX-AG admits that that attribution is false, underscoring testimony. Yes, to answer your point about attribution in count four, paragraph 70, it says that they failed to make a proper attribution. 72, it says that they didn't provide one accounting or an attribution. In 73, it says without making attribution. This is all about attribution and my authorship. So that's what makes me a party to this. If you would just respond for a second. Counsel claims the attribution was due to Cambridge only, pursuant to the contract. No, that's incorrect. They're the ones that are putting that attribution on their product. They chose to make the attribution. They're trying to pin this on SFOX-AG. That's incorrect. That's incorrect. Whether or not SFOX-AG did something, they knowingly since 2012 at least have been making this false attribution and continue today, this very day, to attribute it falsely. That's willful. Do you have any other questions, Your Honor? No, I have no further questions. Thank you very much, Your Honors. Thank you, Mr. Fuqua and Mr. Franek, for your argument. This matter will be taken under advisement. Court will issue an opinion at a later date. Court is adjourned.